**Opinion issued December 23, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-19-01000-CV

———————————

**TRIMCOS, LLC, Appellant**

**V.**

**COMPASS BANK, Appellee**

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-42334**

## O P I N I O N

Appellant, Trimcos, LLC ("Trimcos"), challenges the trial court's rendition of summary judgment in favor of appellee, Compass Bank ("Compass"), in Trimcos's suit against Compass for money had and received, constructive trust, and

breach of contract. In three issues, Trimcos contends that the trial court erred in granting Compass summary judgment.

We affirm.

## Background

In its first amended petition, Trimcos alleged that on or about April 26, 2013, it entered a general construction contract (the "contract") to build an office building on vacant land (the "project") "for Raffy O. Bell and/or Bell Tech Enterprises, Inc." (collectively, "Bell").[1]  On or about April 30, 2013, Trimcos and Bell executed a "Contractor's Agreement and Consent" (the "contractor's agreement") for Compass, Bell's lender, at a loan closing. (Internal quotations omitted.)  As consideration for the contractor's agreement, Compass represented to Bell that it would be financially liable for the work Trimcos completed under the contract.  On May 8, 2013, Compass recorded a deed of trust relating to the project.

---

[1]   The Harris County Clerk's real property records show that Bell Tech Enterprises, Inc. acquired the property at issue by warranty deed on December 9, 2008. *See* TEX. R. EVID. 201(b)(2); *Office of Public Util. Counsel v. Public Util. Comm'n of Tex.*, 878 S.W.2d 598, 600 (Tex. 1994) (appellate courts may take judicial notice of facts which are "capable of accurate and ready determination by resort to a published record whose accuracy cannot reasonably be questioned"); *Alsobrook v. MTGLQ Investors, LP*, No. 05-20-00400-CV, 2021 WL 4958860, at *2 (Tex. App.—Dallas Oct. 26, 2021, no pet.) (mem. op.) (taking judicial notice of property records).

During construction of the project, Trimcos received progress payments directly from Compass. But "[b]ecause Trimcos was not paid in full for [the] work completed," it "recorded a mechanic's lien affidavit on June 15, 2015."

Then Bell defaulted on its loan from Compass, and, as a result, Compass foreclosed on the property where the project was to be built. On July 10, 2017, Compass "recorded a substitute trustee's deed relating to the [p]roject." According to the substitute trustee's deed, Compass "bid $1,953,000.00 for the [p]roject." Trimcos "repeatedly demanded" that Compass "pay for work it [had] completed per the [c]ontract and . . . account for proceeds resulting from the foreclosure sale," but Compass "refused to pay."

Trimcos brought claims against Compass for money had and received, constructive trust, and breach of contract.[2] As to its claim for money had and received, Trimcos maintained that "[i]f [Compass] was subrogated to the 2008 deed of trust" and Trimcos's "[mechanic's] lien claim was extinguished, Trimcos still ha[d] a [mechanic's] lien claim against the foreclosure proceeds in excess of the amount needed to satisfy the 2008 deed of trust." And Trimcos requested the imposition of a "constructive trust in the foreclosure proceeds in an amount sufficient to satisfy its lien claim." As to its breach-of-contract claim, Trimcos

---

[2]     Trimcos also brought a fraudulent-inducement claim against Compass.

alleged that Compass "failed to comply with its obligation under the [c]ontractor's [a]greement (which Compass Bank made part of the loan transaction between it and Bell) to pay for work completed" under the contract. Trimcos sought damages, attorney's fees, and costs.

Compass answered, generally denying the allegations in Trimcos's petition and pleading certain affirmative defenses. Compass also brought several counterclaims against Trimcos. In its second amended counterclaim, Compass alleged that in 2013, Bell "approached [Compass]" to obtain a Small Business Act[3] "construction loan to purchase land and build an office building for [its] business." And Compass acknowledged that Trimcos entered the contract with Bell for Trimcos to serve as the general contractor for the project on April 26, 2013.

According to Compass, "[a]s part of [its] pre-loan procedures, Compass communicated with and interacted with Trimcos." To ensure that its deed of trust would constitute a first lien on the property where the project was to be built, Compass acquired, among other things, documentation signed by Trimcos that Trimcos had not commenced construction or delivered materials to the project property and Trimcos's written assurance that construction "would not begin" and materials would not "be delivered until" Compass had filed its deed of trust.

---

[3]    *See* 15 U.S.C. §§ 631–657u.

4

As part of the loan transaction, Compass also required Bell and Trimcos to execute a "Contractor and Owner Joint Affidavit of Commencement" (the "first affidavit") and an "Affidavit of Commencement" (the "second affidavit").[4] Bell and Trimcos signed the first affidavit on April 25, 2013, the day before they executed the contract for the project. In the second affidavit, signed on April 30, 2013, Bell and Trimcos represented that no construction had begun on the project and no materials had been delivered to the property where the project was to be built and that construction would not begin and materials would not be delivered until Compass "notified [Bell] and [Trimcos] in writing that the [d]eed of [t]rust has been filed in the county records." Bell and Trimcos also attested that they executed the second affidavit "in order to assure [Compass] that the time of the inception of any mechanic's lien ha[d] not occurred, and w[ould] not occur until after [Compass]'s [d]eed of [t]rust [wa]s duly perfected by filing."

Compass further alleged that although Trimcos had executed the first and second affidavits, "Trimcos sent a demand letter to Compass" on August 16, 2017, "claiming for the first time that Trimcos began construction of the [project] before Compass [had] recorded its [d]eed of [t]rust."

---

[4]    *See* TEX. PROP. CODE ANN. § 53.124(c).

Compass brought a counterclaim against Trimcos for "fraud involving a false promise of future performance." According to Compass, it was "not responsible for [making] payments to Trimcos," because, among other things, the contractor's agreement specifically precluded Compass from being liable to Trimcos, the "conditions [precedent] for payment under the [contractor's] agreement" were "not met," and "the amounts claimed by Trimcos [we]re not due and owing." And, according to Compass, Trimcos committed fraud "[w]ith respect to the [s]econd [a]ffidavit," in which "Trimcos promised that construction [of the project] would not commence" and materials would not "be delivered to the [project property] until" Compass "notified Trimcos that the [d]eed of [t]rust was filed."

Compass also brought a breach-of-contract claim against Trimcos, asserting that, "as a direct creditor third party beneficiary of the [second affidavit]," Trimcos breached the second affidavit by "beginning construction or delivering materials to the [project property]" before Compass's deed of trust was filed. And Compass sought a declaration that it was not liable to Trimcos for any amount under the contractor's agreement.

Trimcos answered, generally denying the allegations in Compass's counterclaim and asserting certain affirmative defenses.

Compass then filed a combined no-evidence and matter-of-law summary-judgment motion on Trimcos's claims for money had and received,

6

constructive trust, and breach of contract. As to the no-evidence portion of its motion, Compass argued that Trimcos's money-had-and-received claim failed because there was no evidence that Trimcos's mechanic's lien had priority over Compass's deed of trust or that Compass held funds belonging to Trimcos. And as to Trimcos's constructive-trust claim, Compass argued that there was "no evidence that [Compass] [wa]s holding money" that belonged to Trimcos because, as with Trimcos's money-had-and-received claim, its constructive-trust claim was dependent on establishing that the priority of Trimcos's mechanic's lien was superior to that of Compass's deed of trust, which Trimcos could not do.

As to the matter-of-law portion of its motion, Compass argued that it was entitled to judgment as a matter of law on Trimcos's breach-of-contract claim because Compass was not a party to the contractor's agreement between Bell and Trimcos, which was the basis for Trimcos's breach-of-contract claim. Alternatively, Compass argued that the particular "conditions precedent for [Trimcos's] right to receive payment under the [c]ontractor's [a]greement" had not been satisfied. To support its argument, Compass relied on paragraph 7 of the contractor's agreement, which provides that "the final advance, including all retainage, will not be made until [Compass] has received . . . evidence that no mechanic's or materialmen's liens or other encumbrances have been filed and remain in effect against the [project] [p]roperty" and "final lien releases or waivers [have been made] by

7

[Trimcos], . . . subcontractors, materialmen and all other parties who have supplied labor, materials or services for the construction" of the project.[5]  And Compass attached to its summary-judgment motion the affidavit of Robert Zazula, a Senior Vice President of Compass, who attested that on April 30, 2013, Bell executed a promissory note payable to Compass in the amount of $4,622,500.00 as well as a deed of trust in favor of Compass to secure that indebtedness.  Also, on April 30, 2013, "as part of th[at] transaction," Trimcos and Bell executed the contractor's agreement.  According to Zazula, another company working on the project got into a dispute with Trimcos and that company filed a mechanic's lien on the project property which was covered by the deed of trust.  "[A] lawsuit was in progress" between that other company and Trimcos.  In February 2015, Trimcos's attorney informed Compass that Trimcos had worked on the project with that other company as a subcontractor, "even though [the other company] claimed that it was actually a general contractor."  And in June 2015, Zazula learned from Trimcos's attorney that Trimcos "had also filed a mechanic[']s lien on the [project] property [which was] being covered by the [d]eed of [t]rust."  Zazula stated that "Compass declined to pay [to Trimcos the] retainage withheld during the . . . project," as permitted under the

---

[5]     Compass attached a copy of the contractor's agreement to its summary-judgment motion.

contractor's agreement, because of the existing mechanic's liens and because Trimcos had failed to provide Compass with a lien release from the other company.

Compass also argued, in the matter-of-law portion of its summary-judgment motion, that it had not breached its obligations under the contractor's agreement because it was not required to pay for certain additional items sought by Trimcos. Under paragraph 7 of the contractor's agreement, Compass was required to pay only for "costs and expenses specified in the budget approved by [Compass]." And the additional items for which Trimcos sought payment "were not presented to Compass in a budget or a change order and were therefore not contractually or properly presented for payment." Those items included permit fees, an additional $135,000.00 for a retaining wall, and certain other additional expenses. As to those items, Zazula testified, in his affidavit attached to the summary-judgment motion, that "the budget approved for [the project] did not include permit fees, and no change order was submitted to include those fees." As to Trimcos's $135,000.00 claim for the retaining wall, Zazula attached to his affidavit documentation showing that Trimcos had agreed to absorb that additional expense. And as to the other additional expenses, Zazula stated that "[n]o change order request[s] were received for th[o]se items," so they had not been "approved by [Compass]" as required for payment under the contractor's agreement.

9

In response to Compass's summary-judgment motion, Trimcos asserted that as to Compass's no-evidence grounds related to its money-had-and-received and constructive-trust claims, it was not required to "prove that it rendered services or delivered materials before Compass . . . recorded its deed of trust on May 8. 2013," only that it entered the contract with Bell before May 8, 2013. And Trimcos argued that because the contract was executed April 26, 2013, its mechanic's lien had priority over Compass's deed of trust under the "relation-back doctrine," under which a general construction contract between an owner and a contractor sets the time of inception of all mechanic's liens created by the construction as the date that the contract was executed.[6] Further, Trimcos asserted that the following allegation, in Compass's first amended counterclaim—a pleading that was superseded—constituted an admission of a party opponent that raised a fact issue precluding summary judgment on Trimcos's money-had-and-received and constructive-trust claims: "Based on statements by Trimcos before and after the filing on this lawsuit, Trimcos breached the terms of the [s]econd [a]ffidavit by beginning construction or delivering materials to the [project property] prior to the date the [d]eed of [t]rust was filed."

---

[6]  *See Suntex Fuller Corp. v. Flint Mortg. Grp.*, No. 01-04-00994-CV, 2007 WL 1018637, at *3 (Tex. App.—Houston [1st Dist.] April 5, 2007, no pet.) (mem. op.) (citing *McConnell v. Mortg. Inv. Co. of El Paso*, 305 S.W.2d 280, 283 (Tex. 1957)).

As to Compass's matter-of-law grounds related to Trimcos's breach-of-contract claim, Trimcos responded that it had "standing to assert a claim based on the [c]ontractor's [a]greement" and that there were "no unsatisfied conditions precedent under the [c]ontractor's [a]greement." Alternatively, Trimcos argued that summary judgment on its breach-of-contract claim was not proper "because the removal of liens [was] not [a] condition[] precedent" under the contractor's agreement. And Trimcos referred to the contract to support its position that it "was entitled to final payment for its work [on the project] within three (3) days of obtaining the certificate of occupancy," which was issued on June 3, 2015.

The trial court granted Compass summary judgment on Trimcos's claims for money had and received, constructive trust, and breach of contract and awarded Compass attorney's fees. Compass then nonsuited its counterclaims against Trimcos, making the trial court's summary judgment final.

**Standard of Review**

We review a trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court

11

grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

A party seeking summary judgment may combine in a single motion a request for summary judgment under the no-evidence standard with a request for summary judgment as a matter of law. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). To prevail on a no-evidence summary-judgment motion, the movant must establish that there is no evidence to support an essential element of the non-movant's claim on which the non-movant would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004); *Hahn v. Love*, 321 S.W.3d 517, 523–24 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). The burden then shifts to the non-movant to present evidence raising a genuine issue of material fact as to each of the elements challenged in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006); *Hahn*, 321 S.W.3d at 524. A no-evidence summary-judgment may not be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on the challenged elements in the motion. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded

people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (internal quotations omitted). The trial court must grant a no-evidence summary-judgment motion if the movant asserts that there is no evidence of one or more specified elements of the non-movant's claim on which the non-movant would have the burden of proof at trial and the non-movant fails to file a timely response or fails to produce summary-judgment evidence raising a genuine issue of material fact on each challenged element. *See* TEX. R. CIV. P. 166a(i); *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 67 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

To prevail on a matter-of-law summary-judgment motion, a movant has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs*

13

*Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

### No-Evidence Summary Judgment

In its first and second issues, Trimcos argues that the trial court erred in granting Compass summary judgment on Trimcos's claims for money had and received and for constructive trust because Trimcos's mechanic's lien had priority over Compass's deed of trust.

The equitable doctrines of money had and received and constructive trust are applied to prevent unjust enrichment. *Ferrara v. Nutt*, 555 S.W.3d 227, 244 (Tex. App.—Houston [1st Dist.] 2018, no pet.); *Pickelner v. Adler*, 229 S.W.3d 516, 527 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Nivens v. City of League City*, 245 S.W.3d 470, 474 n.2 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Swinehart v. Stubbeman, McRae, Sealy, Laughlin, & Browder, Inc.*, 48 S.W.3d 865, 878 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Trimcos's money-had-and-received and constructive-trust claims were both premised on Trimcos's position that its mechanic's lien on the project property was superior to Compass's deed of trust. Specifically, Trimcos maintains that the filing of its

14

mechanic's lien relates back to April 26, 2013, the date that Trimcos and Bell executed the contract, and thus predates the recording of Compass's deed of trust.

"Mechanic's liens did not exist at common law or in equity, but rather are creatures of statute." *CVN Grp. v. Delgado*, 95 S.W.3d 234, 246 (Tex. 2002) (Hankinson, J., dissenting) (citing *Lippencott v. York*, 24 S.W. 275, 276 (Tex. 1893); *Pratt v. Tudor*, 14 Tex. 37, 39 (1855)); *see also Crawford Servs., Inc. v. Skillman Int'l Firm, L.L.C.*, 444 S.W.3d 265, 267 (Tex. App.—Dallas 2014, pet. dism'd). The Texas Constitution and Texas Property Code Chapter 53 address the creation of mechanic's liens. *See* TEX. CONST. art. XVI, § 37;[7] TEX. PROP. CODE ANN. §§ 53.001–.260; *CVN Grp.*, 95 S.W.3d at 246–47 (Hankinson, J., dissenting); *Hayek v. W. Steel Co.*, 478 S.W.2d 786, 790–91 (Tex. 1972). In her dissenting opinion in *CVN Group*, Justice Hankinson discussed the interplay between the constitutional and statutory provisions:

> The constitution grants to each contractor who enters into a direct contractual relationship with the real property owner a lien upon the property for materials and labor provided in improving it. . . . [T]he constitutional lien is self-executing; that is, no notice or filing

---

[7] Article 16, section 37 of the Texas Constitution, titled, "Liens of mechanics, artisans, and material men," states:

> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; *and the [Texas] Legislature shall provide by law for the speedy and efficient enforcement of said liens.*

TEX. CONST. art. XVI, § 37 (emphasis added).

15

requirements must be met for the lien to attach, and the lien exists independently and apart from any legislative act. The constitutional lien is not, however, self-enforcing, and the constitution further requires the [Texas] Legislature to provide for the enforcement of mechanic's liens.

*CVN Grp.*, 95 S.W.3d at 246–47 (Hankinson, J., dissenting) (internal citations omitted).

The question here involves the time of inception of Trimcos's mechanic's lien. In connection with the closing on the construction loan for the project, Trimcos—the general contractor—signed affidavits attesting that no work had commenced on the project and no materials had been delivered to the property where the project was to be built. These representations track the statutory language establishing when a lien attaches. *See* TEX. PROP. CODE ANN. § 53.124.[8] Compass

---

[8]     Texas Property Code section 53.124, titled "Inception of Mechanic's Lien," provides:

> (a)     Except as provided by [s]ubsection (e), for purposes of [Texas Property Code] [s]ection 53.123, the time of inception of a mechanic's lien is the commencement of construction of improvements or delivery of materials to the land on which the improvements are to be located and on which the materials are to be used.

> (b)     The construction or materials under [s]ubsection (a) must be visible from inspection of the land on which the improvements are being made.

> (c)     An owner and original contractor may jointly file an affidavit of commencement with the county clerk of the county in which the land is located not later than the 30th day after the date of actual commencement of construction of the improvements or delivery of materials to the land. The affidavit must contain:

>> (1)     the name and address of the owner;

16

relied on those representations in lending funds to Bell for the project's construction to ensure that its deed of trust would constitute a first lien on the project property.

Trimcos urges us to follow the "relation[-]back" doctrine first declared by the Texas Supreme Court in *Oriental Hotel v. Griffiths*. 33 S.W. 652, 653 (Tex. 1895). According to that common-law doctrine, if there is a general construction contract between an owner and a contractor, the time of inception of all mechanic's liens

---

> (2)    the name and address of each original contractor, known at the time to the owner, that is furnishing labor, service, or materials for the construction of the improvements;
>
> (3)    a description, legally sufficient for identification, of the property being improved;
>
> (4)    the date the work actually commenced;  and
>
> (5)    a general description of the improvement.
>
> (d)    An affidavit filed in compliance with this section is prima facie evidence of the date of the commencement of the improvement described in the affidavit.  The time of inception of a mechanic's lien arising from work described in an affidavit of commencement is the date of commencement of the work stated in the affidavit.
>
> (e)    The time of inception of a lien that is created under [Texas Property Code [s]ection 53.021(c), (d), or (e)[, addressing liens for architects, surveyors, landscapers, demolition workers, and others,] is the date of recording of an affidavit of lien under [s]ection 53.052. The priority of a lien claimed by a person entitled to a lien under [s]ection 53.021(c), (d), or (e) with respect to other mechanic's liens is determined by the date of recording.  A lien created under [s]ection 53.021(c), (d), or (e) is not valid or enforceable against a grantee or purchaser who acquires an interest in the real property before the time of inception of the lien.
>
> TEX. PROP. CODE ANN. § 53.124(a)–(e).

created by the construction is the date that the general construction contract was executed. *McConnell v. Mortg. Inv. Co. of El Paso*, 305 S.W.2d 280, 283 (Tex. 1957); *Suntex Fuller Corp. v. Flint Mortg. Grp.*, No. 01-04-00994-CV, 2007 WL 1018637, at *3 (Tex. App.—Houston [1st Dist.] Apr. 5, 2007, no pet.) (mem. op.). Applying that doctrine here, Trimcos argues that because its execution of the contract—a general construction contract—with Bell predates Compass's deed of trust, its mechanic's lien has priority over Compass's deed of trust. Compass, on the other hand, looks to Texas Property Code section 53.124 as the sole authority for establishing the priority of Trimcos's mechanic's lien and argues that, because that section does not declare that a mechanic's lien relates back to the date of the contract, Trimcos's mechanic's lien does not predate Compass's deed of trust.

When the Texas Supreme Court decided *Oriental Hotel*, the mechanic's lien statute did not address a lien's time of inception. *See* 33 S.W. at 661–62. In 1971, though, the Texas Legislature amended the statute to define "inception of the lien." *See* Act of May 17, 1971, 62d Leg., R.S., ch. 231, § 1, 1971 Tex. Gen. Laws 1082. This amendment was passed "in reaction to the first opinion rendered [by the Texas Supreme Court] in *Irving Lumber Co[.] v. Alltex Mortgage Co[.]*,[9] which allowed

---

[9]     14 Tex. Sup. Ct. J. 212 (July 2, 1971), *on reh'g*, 468 S.W.2d 341 (Tex. 1971); *see also Diversified Mortg. Invs. v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 804–05 (Tex. 1978) (explaining first opinion in *Irving Lumber* "was rendered on July 2, 1971," but Texas Supreme Court "consider[ed] [a] motion for rehearing," "withdrew the first opinion[,] and substituted the second opinion on May

18

oral construction contracts to indicate the inception of a mechanic's lien, thereby in effect allowing the creation of silent or secret mechanic's liens." *Diversified Mortg. Invs. v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 804–05 (Tex. 1978) (internal citation omitted). By defining the "inception of a lien," the amended statute "created the system whereby mortgagors could rely upon notice in the county records or by visual inspection of the property as to any existing liens on the property." *Id.* at 805 (internal quotations omitted).

Since 1971, then, Texas has statutorily defined the time of inception of a mechanic's lien. Currently, Texas Property Code section 53.124 specifies that the time of inception of a mechanic's lien is "the commencement of construction of improvements or delivery of materials to the land on which the improvements are to be located and on which the materials are to be used," as long as they are "visible from inspection of the land on which the improvements are being made." TEX. PROP. CODE ANN. § 53.124(a), (b). And section 53.124 specifically addresses "original contractors," i.e., persons who "contract with an owner either directly or through the owner's agent,"[10] providing that the owner and original contractor "may jointly file an affidavit of commencement with the county clerk of the county in which the land

---

19, 1971"; "[t]he second opinion d[id] not construe or refer in any way to the amendment").

[10] *See* TEX. PROP. CODE ANN. § 53.001(7) (defining "[o]riginal contractor" (internal quotations omitted)).

19

is located not later than the 30th day after the date of actual commencement of construction of the improvements or delivery of materials to the land." *Id.* § 53.124(c). An affidavit with contents that comply with the statute will constitute "prima facie evidence of the date of the commencement of the improvement described in the affidavit," which is "[t]he time of inception of a mechanic's lien arising from work described" in the affidavit. *Id.* § 53.124(d), (e). These provisions would have no purpose if the general contractor could simply rely on the date of the general construction contract as the time of the inception of the mechanic's lien.

The Texas Constitution directs the Texas Legislature to "provide by law for the speedy and efficient enforcement of [mechanic's] liens." TEX. CONST. art. XVI, § 37. Because mechanic's liens are "creatures of statute," it would violate that constitutional directive if we decided to override the Texas Property Code's specific definition of the time of a lien's inception with a common-law rule gleaned from a case decided before the applicable statute defined the time of inception.[11] "A

---

[11] In *Hubert Lumber Co. v. King*, an appeal decided on rehearing shortly after the Texas Supreme Court issued its second opinion in *Irving Lumber*, this Court was asked to apply the lien inception rule stated in *Oriental Hotel v. Griffiths*, 33 S.W. 652 (Tex. 1895), but determined that the rule did not apply because the party contracting with the lienholder was only a prospective owner. *See* 468 S.W.2d 503, 504–05 (Tex. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.). And in a 2011 opinion, this Court cited to *Oriental Hotel* in explaining that:

> The time of inception of a properly perfected [mechanic]'s lien is the earlier of either (1) the commencement of a lienholder's construction of improvements on the property or (2) the lienholder's delivery of materials to the land on which the

20

fundamental constraint on the courts' role in statutory interpretation is that the [l]egislature enacts the laws of the state and the courts must find their intent in that language and not elsewhere." *Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 493 (Tex. 2013). We must presume that "the [l]egislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact." *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012). These interpretive constraints have particular force here, where the Texas Constitution gives the legislature the exclusive authority to enact laws for the enforcement of mechanic's liens. And we acknowledge that the

---

improvements are to be located and on which the materials are to be used. TEX. PROP. CODE ANN. § 53.124(a) . . . . If there is a general contract regarding the construction of improvements to the property, the courts apply the relation[-]back doctrine to determine the time of a lien's inception. Under the relation[-]back doctrine, the time of inception of all [mechanic's] liens created will be the date the contract was executed if there is a general construction contract between the owner and a contractor.

*Texan Drywall, Inc. v. Le*, No. 01-09 01063-CV, 2011 WL 2089668, at *3 (Tex. App.—Houston [1st Dist.] May 19, 2011) (mem. op.). In that case, though, "there was no evidence of a general construction contract," so the Court's discussion of the date of inception of a mechanic's lien is dicta. *See id.* And this Court used similar language in *Suntex Fuller*. *See* 2007 WL 1018637, at *3. But, as in *Texan Drywall*, in *Suntex Fuller*, "there was no general construction contract or general contractor," so that portion of the opinion is likewise dicta. *See id.*; *see also Inman v. Orndorff*, 596 S.W.2d 236, 238 (Tex. App.—Houston [1st Dist.] 1980, no writ) (using similar language but observing "[t]here is nothing in the evidence to show that the improvements were placed on the subject land under a contract with the owner of the land"). Thus, none of these cases are binding precedent as to the time of inception of the mechanic's lien in this case.

21

legislature has nowhere defined the time of inception of a mechanic's lien as the date that an owner and an original contractor execute a general construction contract.

We conclude that, for purposes of enforcing a mechanic's lien, Texas Property Code section 53.124, which defines the time of inception of a properly perfected mechanic's lien as the earlier of either (1) the commencement of a lienholder's construction of improvements on the property or (2) the lienholder's delivery of materials to the land on which the improvements are to be located and on which the materials are to be used, provides the only measures for calculating the time of inception of a mechanic's lien, including those liens between an original contractor and owner. Thus, the priority of Trimcos's mechanic's lien is determined by one of those statutory measures, not by when Trimcos and Bell executed the contract.

We note Trimcos also maintains that Compass made an admission against interest in a superseded pleading—its first amended counterclaim—that raises a fact issue as to whether Trimcos began construction of improvements or delivered materials to the property where the project was to be built before Compass's deed of trust was filed.[12] An admission against interest in an abandoned pleading may be used in evidence. *Long v. Knox*, 291 S.W.2d 292, 294 (Tex. 1956); *Loy v. Harter*,

---

[12]    The argument on this issue in Trimcos's appellant's brief cites to a different pleading than the one cited in its summary-judgment response. Trimcos is limited to the arguments raised in its response in the trial court. *See Lee v. Braeburn Valley W. Civic Ass'n*, 786 S.W.2d 262, 263 (Tex. 1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 675 (Tex. 1979).

128 S.W.3d 397, 407 (Tex. App.—Texarkana 2004, pet. denied). Compass's first amended counterclaim states: "Based on statements by Trimcos before and after the filing of this lawsuit, Trimcos breached the terms of the [s]econd [a]ffidavit by beginning construction or delivering materials to the [project property] prior to the date the [d]eed of [t]rust was filed." Read in context, this is not a statement against Compass's interest. It is not an unconditional statement that Trimcos actually began construction or delivered materials to the property where the project was to be built. It is conditioned on representations made by Trimcos that, if proven, it would have satisfied one of the elements necessary to hold Trimcos liable for breach of contract and fraud against Compass because they contradict representations made by Trimcos in the first and second affidavits. *See*, *e.g.*, *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015) (reciting elements of fraud claim); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (reciting elements of breach-of-contract claim). Because the cited portion of Compass's first amended counterclaim is not an admission against interest, it does not create a fact issue as to whether the time of inception of Trimcos's mechanic's lien predates Compass's deed of trust.

Based on the foregoing, we conclude that Trimcos failed to raise a fact issue that it commenced the construction of improvements or delivered materials to the project property before Compass filed its deed of trust. *See* TEX. PROP. CODE ANN.

23

§ 53.124(a). And, because Trimcos failed to raise a fact issue as to whether its mechanic's lien had priority over Compass's deed of trust, there is no fact issue as to whether Compass was unjustly enriched. Unjust enrichment is the foundation of Trimcos's money-had-and-received and constructive-trust claims. *See Ferrara*, 555 S.W.3d at 244; *Pickelner*, 229 S.W.3d at 527; *Nivens*, 245 S.W.3d at 474 n.2; *Swinehart*, 48 S.W.3d at 878. As a result, we hold that the trial court did not err in granting Compass summary judgment on Trimcos's money-had-and-received and constructive-trust claims.

We overrule Trimcos's first and second issues.

**Matter-of-Law Summary Judgment**

In its third issue, Trimcos argues that the trial court erred in granting Compass summary judgment on Trimcos's claims for breach of contract and attorney's fees because Compass's summary-judgment motion relied in part on its assertion that Trimcos failed to satisfy the conditions precedent to recovery under paragraph 7 of the contractor's agreement.

Paragraph 7 of the contractor's agreement provided that Compass would not pay the "final advance, including all retainage," until it received evidence "that no mechanic's or materialmen's liens or other encumbrances ha[d] been filed and remain[ed] in effect against the [project] [p]roperty" as well as "final lien releases or waivers" by Trimcos and others with any lien or claim on the project property.

24

Compass's summary-judgment evidence established that Trimcos and one of its subcontractors had filed a  mechanic's lien on the project property and had not provided releases or waivers of those liens.  Trimcos asserts that if Compass is correct about the priority of its deed of trust, the mechanic's liens have been extinguished.  But that assertion does not satisfy the contractor's agreement, which requires, before payment of the final advance, Compass must receive "evidence that no mechanic's . . . liens or other encumbrances . . . remain in effect" as well as "final lien releases or waivers" by Trimcos and others "who otherwise might be entitled to claim any type or kind of lien against the [project] [p]roperty."

Compass's summary-judgment motion further asserted that in seeking payment of certain costs and expenses not specified in the budget approved by Compass, paragraph 7 of the contractor's agreement only required Compass to pay "for costs and expenses" approved by Compass.  And Compass provided evidence showing that the additional expenses for which Trimcos sought repayment had not been approved for payment by Compass, either in the budget or in a change order.  Trimcos complains that its failure to "obtain pre-approval on items not included in the . . .  contract should not result in forfeiture of amounts that were agreed upon."  But Trimcos did not identify any "amounts that were agreed upon" in its summary-judgment response.  And although Trimcos cites general propositions of law in its appellant's brief, it provides no analysis of the cited authorities or

25

explanation of how they are relevant to the specific conditions precedent challenged in Compass's summary-judgment motion. *See* TEX. R. APP. P. 38.1(i); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 896 (Tex. App.—Dallas 2010, no pet.) (noting "references to sweeping statements of general law are rarely appropriate" and briefing is inadequate if it does not provide existing legal authority that can be applied to facts of case).

Texas Rule of Appellate Procedure 38.1(i) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* TEX. R. APP. P. 38.1(i). A failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal. *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 75 (Tex. App.—San Antonio 2011, no pet.); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.); *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 255 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also In re Estate of Taylor*, 305 S.W.3d 829, 836 (Tex. App.—Texarkana 2010, no pet.) (failure to cite legal authority or to provide substantive analysis of issue presented results in waiver of complaint on appeal). To the extent that Trimcos attempts to raise additional arguments to support its complaint that the trial court erred in granting Compass summary judgment on Trimcos's breach-of-contract and

26

attorney's-fees claims, we hold that those arguments are waived due to inadequate briefing.

Based on the foregoing, we conclude that the undisputed evidence establishes as a matter of law that the conditions precedent found in paragraph 7 of the contractor's agreement and addressed in Compass's summary-judgment motion were not satisfied, and that, as a result, Compass was not required to make the payments demanded by Trimcos.[13] Thus, we hold that the trial court did not err in granting Compass summary judgment on Trimcos's breach-of-contract and attorney's-fees claim.

We overrule Trimcos's third issue.

## Conclusion

We affirm the judgment of the trial court.


Julie Countiss
Justice

Panel consists of Justices Goodman, Landau, and Countiss.

---

[13] Because we affirm Compass's summary judgment on this ground, we need not consider whether Trimcos has standing under the contractor's agreement. *See* TEX. R. APP. P. 47.1.