Opinion issued April 5, 2007


 












In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-05-00335-CV






JOSEPH KNUTE NIVENS, WILBUR DUNTEN, AND MARVIN
FONTENOT, Appellants


V.


CITY OF LEAGUE CITY, TEXAS, Appellee






On Appeal from the 405th District Court

Galveston County, Texas

Trial Court Cause No. 04CV1057






OPINION ON REHEARING


 We withdraw our Opinion of January 18, 2007 and issue this one in its stead. 
We deny appellants' motion for rehearing.

 Appellants, Joseph Knute Nivens, Wilbur Dunten, and Marvin Fontenot,
(collectively "the taxpayers"), challenge the trial court's order granting a plea to the
jurisdiction in favor of appellee, the City of League City ("the City"). We affirm.

Factual and Procedural Background

 In 1981, the City consented to create Municipal Utility Districts ("MUDs") 
One through Six, which are located within the boundaries of the City. (1) The City
executed contracts ("utility agreements") with each MUD. The utility agreements
were for the acquisition and construction of water, sewer, and drainage systems. Each
utility agreement also noted that both the City and the MUD would levy and collect
ad valorem taxes on the taxable property in each MUD and the City would allocate
40% of the taxes it collected from the residents to the respective MUD. Seven years
later, the City amended its utility agreements with MUD Numbers Two and Three and
stated that the allocation percentage payable by the City to each MUD was to be
determined in accordance with a "complex formula." The next year, the City also
amended its original utility agreement with MUD Number Six to reflect the same
change.

 A few years later, the taxpayers, who resided in the MUDs, sued the City,
MUD Numbers Two, Three, and Six, and their respective directors to recover
damages equal to the taxes that they had paid on their property. The taxpayers,
asserting claims against the City for money had and received, breach of contract, and
"mistake," allege that, under the utility agreements, the City collected ad valorem
taxes from them in excess of the amount that it was legally permitted to collect
pursuant to section 54.016(f) of the Texas Water Code. The taxpayers argue that
section 54.016(f) provides that the contracts must contain "an allocation agreement
to assure that the total ad valorem taxes collected by [the City] and the [MUDs] from
the taxable property within the [municipal utility] district does not exceed an amount
greater than the [C]ity's ad valorem taxes on such property." The taxpayers also
argue that the tax limitations contained in section 54.016(f) became part of and
govern the utility agreements. 

 In response, the City filed its first amended answer and plea to the jurisdiction. 
In its plea, the City alleged that the trial court lacked jurisdiction over the taxpayers'
case because the taxpayers failed to plead sufficient facts to overcome the City's
immunity from suit. The trial court granted the City's plea to the jurisdiction and
dismissed the taxpayers' case for want of jurisdiction.Plea to the Jurisdiction

 In their sole issue, the taxpayers argue that the trial court erred in granting the
City's plea to the jurisdiction. 

 A plea to the jurisdiction is a dilatory plea challenging a trial court's authority
to determine the subject matter of the cause of action without defeating the merits of
the case. City of Houston v. Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 308
(Tex. App.--Houston [1st Dist.] 2001, pet. denied) (citing Bland I.S.D. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000)). While the underlying claims may form the context in
which a plea to the jurisdiction is raised, the purpose of the plea is not to preview or
delve into the merits of the case, but to establish the reason why the merits of the
underlying claims should never be reached. Id. In a plea to the jurisdiction, "the
pleader must allege facts that affirmatively demonstrate the court's jurisdiction to
hear the cause." City of Houston v. Rushing, 7 S.W.3d 909, 913 (Tex.
App.--Houston [1st Dist.] 1999, pet. denied). A trial court's ruling on a plea to the
jurisdiction presents a legal question which is reviewed de novo. See Northwood, 73
S.W.3d at 308. Questions involving the application of the principles of sovereign and
governmental immunity and a party's standing to bring an action are the proper
subjects of a plea to the jurisdiction. See Brown v. Todd, 53 S.W.3d 297, 300-01
(Tex. 2001). Governmental Immunity

 In response to the taxpayers' issue, the City asserts that this entire action is
barred by the principle of governmental immunity and that the taxpayers have not
pleaded sufficient facts to overcome this immunity.

 Governmental immunity protects political subdivisions of the State from suit,
unless immunity from suit has been waived. See Gen. Servs. Comm'n v. Little-Tex
Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001). Governmental immunity inures to
the benefit of a municipality insofar as the municipality engages in the exercise of
governmental functions, except when that immunity has been waived. Fort Worth
Indep. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000).

 Governmental immunity from suit defeats a trial court's subject-matter
jurisdiction and is properly asserted in a plea to the jurisdiction. Tex. Dep't of
Transp. v. Jones, 8 S.W.3d 636, 638 (Tex. 1999). Generally, a party suing a
governmental entity must establish consent to sue, which may be alleged either by
reference to a statute or to express legislative permission. See Mo. Pac. R.R. Co. v.
Brownsville Navigation Dist., 453 S.W.2d 812, 814 (Tex. 1970).

 However, where a claim for declaratory or injunctive relief is brought seeking
the refund of illegally collected tax payments, governmental immunity will not apply
if the taxpayer alleges that the payments were made as a result of fraud, mutual
mistake of fact, or duress, whether express or implied. See Dallas County Cmty.
College Dist. v. Bolton, 185 S.W.3d. 868, 876-79 (Tex. 2005) (holding that a
taxpayer cannot bring a suit for the return of illegally collected taxes if the payments
were made voluntarily); see also Camacho v. Samaniego, 954 S.W.2d 811, 822 (Tex.
App.--El Paso 1997, pet. denied). The revenue generated from a tax determined to
be illegal should not be treated as property of the State or municipality to which the
principles of sovereign immunity apply, and an illegally collected fee should be
refunded if paid as a result of fraud, mutual mistake of fact, or duress, without respect
to waiver of sovereign immunity. See Camacho, 954 S.W.2d at 822; Austin Nat'l
Bank of Austin v. Sheppard, 71 S.W.2d 242, 246 (Tex. 1934). No legislative consent
to sue is needed under these circumstances.

 In this case, the taxpayers have not pleaded sufficient facts to establish that
their claims are not barred by the City's governmental immunity. In their First
Amended Petition, the taxpayers assert a claim for "money had and received" and
allege that "the money collected by the DEFENDANTS for illegal taxes rightfully
belongs to PLAINTIFFS and in equity and good conscience should be returned to
PLAINTIFFS." (2) The taxpayers also assert a claim for breach of contract and
"mistake." These pleadings do not seek declaratory and/or injunctive relief regarding
the levy and refund of illegal taxes and do not allege that the taxpayers made any
payments as a result of fraud, mutual mistake of fact, or duress. (3) 

 Furthermore, in light of the mandates of Texas Rule of Civil Procedure 13, the
taxpayers cannot plead that they made any payment of taxes as a result of a mutual
mistake of fact. (4) The trial court was presented with evidence from both the taxpayers
and the City establishing that the City did not collect the taxes as a result of a mutual
mistake of fact. The trial court received the affidavit of Joe Lamb, submitted by the
taxpayers in response to the City's motion for summary judgment, and copies of the
contracts between the City and the MUDs at issue in this case. This evidence
establishes that the City was required to collect the ad valorem taxes from the
taxpayers pursuant to the series of contracts between the MUD and the City. The
taxes were not collected as a result of a mistake by the City, and the parties both agree
that the City has been collecting the taxes pursuant to these contracts since about
1981. (5) The taxpayers alleged no facts which would establish that the taxes were
collected as a result of a mistake of fact on the part of the City. Accordingly, the
claims for money had and received, mistake, and breach of contract are barred by
governmental immunity. See Camacho, 954 S.W.2d at 826. 

 The taxpayers also assert that the City's immunity to this suit has been
expressly waived by section 51.075 of the Texas Local Government Code. This
section provides that a home rule municipality such as the City "may plead and be
impleaded in any court." Tex. Loc. Gov't Code Ann. § 51.075 (Vernon 1999).
However, recently, in Tooke v.City of Mexia, 197 S.W.3d 325, 342-43 (Tex. 2006),
the Texas Supreme Court ruled that this statute does not constitute a clear and
unambiguous waiver of immunity from suit. Accordingly, we hold that the trial court
did not err in granting the City's plea to the jurisdiction on the basis of governmental
immunity. (6) 






Conclusion

 Accordingly, we deny the taxpayers' motion for rehearing and affirm the trial
court's judgment. 



 

 George C. Hanks, Jr.

 Justice


Panel consists of Chief Justice Radack and Justices Jennings and Hanks.
1. 
 
 § 
 
2. 
 
 
-- 
3. The taxpayers represented to the trial court that their causes of action are contractual
claims asserting that "PLAINTIFFS [sic] claim against the City is based on Money
Had and Received, Mistake, and Breach of Contract. All causes of action are on
either express or implied contracts, not tort as mischaracterized by the City."
4. Rule 13 sets forth the sanctions available to the trial court for the filing of frivolous
pleadings by parties and their counsel. Tex. R. Civ. P. 13. 
5. Plaintiffs' First Amended Petition states that the contracts "provided, inter alia, that the [City] and the [MUD] would both levy and collect ad valorem taxes on the taxable property and the [City] would allocate forty-percent of the taxes collected from these residents for payment to the [MUD]."
6. 
 
 ' ' 
 '