**Opinion issued December 21, 2023**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-20-00287-CV

—————————————

**CITY OF PASADENA, JEFF WAGNER, AND ROBIN GREEN, Appellants**

**V.**

**APTVV, LLC AND APTPCY, LLC, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-25740**

---

## MEMORANDUM OPINION ON REHEARING

Two Pasadena apartment-complex owners sued the City of Pasadena, its mayor, and its director of public works, alleging that money paid to the City through utility and trash-collection billing is an unconstitutional tax or fee. The City and its officials moved to dismiss for lack of subject matter jurisdiction, asserting

governmental immunity from suit. The trial court denied the plea to the jurisdiction. In five issues, the City and its officials contend that the trial court erred in denying the plea to the jurisdiction.

On August 11, 2022, we issued a memorandum opinion and judgment affirming the trial court's order denying the City's plea to the jurisdiction. The City moved for panel rehearing and en banc reconsideration, asserting that the memorandum opinion required additional jurisdictional analysis.[1] *See* TEX. R. APP. P. 49.1, 49.5. The apartment owners responded. *See* TEX. R. APP. P. 49.2. We grant panel rehearing, withdraw our opinion of August 11, 2022, vacate our judgment of the same date, and substitute this opinion and judgment in their stead.[2] Our disposition, however, remains the same. We affirm the trial court's order denying the City's plea to the jurisdiction.

---

[1]    Based on the arguments in the parties' briefs, our original memorandum opinion affirmed the denial of the City's plea to the jurisdiction on the sufficiency of the apartment owners' pleadings. On rehearing, the City contends for the first time in this Court that the undisputed evidence negates essential jurisdictional facts. Because such jurisdictional challenges may be made at any time in the proceeding, *see Rusk State Hospital v. Black*, 392 S.W.3d 88, 94 (Tex. 2012), we consider this argument now.

[2]    The City's motion for en banc reconsideration of the prior panel opinion is moot. *See In re Wagner*, 560 S.W.3d 309, 312 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding); *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 472 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 33 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

**Background**

APTVV, LLC owns the Victoria Village Apartments, a 612-unit apartment complex in the City of Pasadena. APTPCY, LLC owns the Courtyard Apartments, a 195-unit apartment complex also in the City of Pasadena. The two entities will be referred to collectively as the Apartment Owners.

The Apartment Owners have sued the City of Pasadena and two city officials in a declaratory judgment action seeking the return of money paid to the City through utility and trash-collection billing, plus attorney's fees. They allege that the City implemented a waste-removal scheme (1) granting an exclusive contract to Waste Management to provide trash-removal services to all non-residential customers in the City and (2) requiring all non-residential trash-removal customers to use Waste Management and to pay whatever amount the City dictated.

Through a 2018 City ordinance, the City specified a base rate for Waste Management's services. The base rate set the maximum that Waste Management could charge non-residential customers for trash removal. The rate varied depending on the quantity and frequency of trash-removal services.

Through the same 2018 City ordinance, the City imposed a 25% City Fee on trash-removal bills, meaning that 25% of the money Waste Management received for trash-removal services for non-residential customers would be forwarded to the

City in exchange for the exclusive right to collect trash within the city limits.[3] The City's fee schedule stated that the 25% City Fee was included in the base rate amount set by the City.

One of the bills in dispute charged for the removal of trash from front-end-load, eight-yards containers four times per week. The City's fee schedule listed a base rate for that monthly service of $507.58, which included the 25% City Fee. The record contains bills sent from before and after the 2018 ordinance and fee schedule took effect. The pre-2018-ordinance bill includes a single line item for trash service without specifically noting the 10% City Fee and then other line items for city taxes. According to the record evidence, the then-applicable 10% City Fee was included in the base rate figure. The post-2018-ordinance bills are structured differently. There is a line item for the base rate, a second line item for the 25% City Fee, and other line items for city taxes. The bills in the record generally increased about 16% after the 2018 ordinance and its 25% City Fee were applied.

The Apartment Owners sued, alleging that the City Fee is an impermissible tax by the City on commercial customers, who are forced to accept trash-removal services from Waste Management under the City-created monopoly and forced to pay an excessive 25% tax on the mandated services. The Apartment Owners characterize the 25% City Fee as a "kickback." According to the Apartment Owners,

---

[3]     Before 2018, the City Fee had been 10%.

4

if they were to refuse to accept trash-removal services under the monopoly or to pay the 25% kickback to the City, the City could suspend waste collection at their properties and pursue both civil remedies for uncollected solid waste constituting a nuisance and criminal sanctions for non-compliance.

The Apartment Owners' declaratory judgment action against the City seeks (1) a determination that the 25% City Fee is an excessive and thus unconstitutional tax applied to local businesses through a trash-collection scheme, (2) return of past payments of the City Fee, and (3) attorney's fees. They assert that they have paid the illegal fee under duress because, otherwise, they would have faced civil and criminal penalties.

In the same declaratory judgment action, APTVV challenges a "customer service inspection certification charge" that appeared on its August 2016 utility bill in the amount of $12,240. APTVV alleges it paid the fee to the City under the same duress and has demanded its refund. The City allegedly responded that the fee represented a $20-per-unit inspection charge for the 612-unit apartment complex. APTVV disputes that any City official inspected all 612 units at its complex and argues that, aside from the charge having no factual basis, it is unconstitutionally excessive. APTVV includes in its declaratory judgment action a claim for the return of the $12,240 inspection certification charge it paid to the City under duress.

Along with the declaratory judgment action against the City, the Apartment Owners suit includes a breach-of-contract claim against Waste Management seeking monetary damages.

The City and its officials moved to dismiss the claims against them on the ground that the City enjoys governmental immunity from suit and all claims against the officials are claims against the City.

The Apartment Owners responded. They emphasized that their burden in defeating a plea to the jurisdiction is only to allege facts that, if taken as true, establish jurisdiction, not to prove their allegations at this preliminary stage of the litigation. And they argued that the City does not have immunity against suits seeking declaratory relief and the return of money had and received, relying on *Federal Sign v. Texas Southern University*, 951 S.W.2d 401, 404 (Tex. 1997), and *Nivens v. City of League City*, 245 S.W.3d 470, 475 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

The trial court denied the City's plea to the jurisdiction, and the City and its officials appealed.[4] They raise five issues, which we quote:

> 1. [The Apartment Owners'] claim for money had and received is barred by governmental immunity because there is no statutory waiver of immunity for this or any other quasi-contractual claims.
>
> 2. [The Apartment Owners'] claim against the City for declaratory relief, which merely couches their claim for monetary damages as a

---

[4]     Although it is a defendant below, Waste Management is not a party on appeal.

6

request for declaratory relief, is barred by the City's governmental immunity because the Declaratory Judgment Act is merely a procedural device for claims over which a court has subject matter jurisdiction.

3. Because [the Apartment Owners] are neither a party nor third-party beneficiary to the City's contract with Waste Management, [they] lack standing to challenge the City's exclusive waste contract with Waste Management.

4. The City's exclusive franchise contract with Waste Management for commercial solid waste disposal within the city is permissible under [a] Texas statute and constitutional.

5. [The Apartment Owners] fail to and cannot assert a valid *ultra vires* claim against Mayor Jeff Wagner, and Robin Green, the City's Public Works Director, because Mayor Wagner and Green did not enter into the Contract with Waste Management and, as a result, neither Wagner nor Green could be a responsible government actor for [the Apartment Owners'] *ultra vires* claim.

## Analysis

The City contends that the Apartment Owners did not overcome the presumption of governmental immunity and that there is no statutory waiver of immunity for the Apartment Owners' claims arising from the 25% City Fee and APTVV's claim for the overpayment of inspection fees. As a result, the City argues, the trial court erred in denying its plea to the jurisdiction.

### A. Standards of review of a plea to the jurisdiction

A party may challenge a trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Ordinarily a plea to the jurisdiction challenges the plaintiff's pleadings, asserting that the alleged facts do not affirmatively demonstrate the trial court's subject matter jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). To defeat a plea to the jurisdiction based on governmental immunity, "[a] plaintiff suing the [government] must plead facts that, if true, affirmatively demonstrate that [governmental] immunity either does not apply or has been waived." *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021) (quotation omitted). "This is because the government retains immunity from suit unless the [plaintiff] has pleaded a viable claim." *Id.* at 389 (quotation omitted). We "construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012).

A plea to the jurisdiction may also challenge the existence of jurisdictional facts, and when it does, the parties may present evidence. *Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 635. "In those situations, a trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion." *Id.* The movant must present summary judgment proof showing that the court lacks jurisdiction. *Id.* The burden then shifts to the nonmovant to show that there is a material question of disputed fact on the jurisdictional issue. *Id.*; *see* TEX. R. CIV. P. 166a(c) (to prevail on traditional summary judgment motion, movant must show that

8

no genuine issues of material fact exist and that it is entitled to judgment as matter of law).

## B.     Governmental immunity

Sovereign immunity is a common law doctrine that protects the state from suit or liability. *Hillman v. Nueces Cnty.*, 579 S.W.3d 354, 357 (Tex. 2019). "Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the State, including counties, cities, and school districts." *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see Garcia v. City of Willis*, 593 S.W.3d 201, 208 (Tex. 2019) ("Political subdivisions of the state, including cities, share in Texas' inherent sovereign immunity."). The Legislature may waive sovereign immunity, but because it is a common law doctrine, it is "the judiciary's responsibility" "to determine under what circumstances sovereign immunity exists in the first instance." *Garcia*, 593 S.W.3d at 208–09 (quoting *Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 375 (Tex. 2006)).

Keeping with this responsibility, the Texas Supreme Court recognizes "a narrow exception to immunity when a plaintiff seeks reimbursement of an allegedly unlawful tax, fee, or penalty that was paid involuntarily and under duress." *Id.* at 209; *see Saturn Cap. Corp. v. City of Hous.*, 246 S.W.3d 242, 245 (Tex. App.— Houston [14th Dist.] 2007, pet. denied) ("[S]overeign immunity does not prevent a party who paid illegal government taxes and fees under duress from filing a lawsuit

9

to seek their repayment."); *Nivens*, 245 S.W.3d at 474 (recognizing same). This is because money collected from an illegal tax, fee, or penalty should not be treated as the municipality's property and subject to immunity; instead, the illegally collected tax, fee, or penalty should be refunded if paid because of fraud, mutual mistake of fact, or duress, without respect to waiver of sovereign immunity. *Nivens*, 245 S.W.3d at 474. "No legislative consent to sue is needed under these circumstances." *Id.*

In *Nivens*, taxpayers asserted claims for money had and received but did not seek declaratory or injunctive relief and did not allege that their payments resulted from fraud, mutual mistake of fact, or duress. *Id.* Thus, this Court held that their claims were barred by governmental immunity. *Id.*; *see Tara Ptrs., Ltd. v. City of S. Hous.*, 282 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding that claims were barred by governmental immunity because ratepayers did not plead that they paid under duress).

Later, in *Anheuser-Busch, L.L.C. v. Harris County Tax Assessor-Collector*, a taxpayer was assessed over $600,000 in penalties and interest on its delinquent tax payment. 516 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The taxpayer paid the penalty to avoid additional penalties and interest and then sued for its return. *Id.* at 5. The tax assessor-collector argued that it had governmental immunity and that the trial court lacked subject matter jurisdiction. *Id.* Relying on *Nivens*, we held that no legislative consent to sue was required because the taxpayer

10

sought a declaratory judgment and alleged it paid the improper penalties and interest under duress. *Id.* Immunity did not protect the tax assessor-collector from suit; consent to sue was not required. *Id.*

Although the City acknowledges these authorities, it contends the Apartment Owners still cannot overcome the presumption of governmental immunity because no *statutory* waiver of immunity applies. But as these authorities show, a statutory waiver of immunity is not required here. Like the *Anheuser-Busch* taxpayer, the Apartment Owners brought a declaratory judgment action, asserting a claim for money had and received and requesting return of allegedly illegal tax payments and inspection fees made under duress. These allegations fit within our precedent and compel the conclusion that immunity from suit does not exist and therefore no legislative consent to sue is required.[5] *Nivens*, 245 S.W.3d at 474; *Anheuser-Busch*, 516 S.W.3d at 6.

The City's other arguments are unavailing. The City asserts that it retains immunity for the claims arising from the 25% City Fee because undisputed evidence shows that Waste Management pays the fee, not the Apartment Owners. The City points to (1) the terms of its contract with Waste Management requiring Waste

---

[5] The City's reliance on *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006), is misplaced in that it is a breach-of-contract case involving a claim for consequential damages.

11

Management to "pay monthly . . . to [the] City twenty-five percent (25%) of the compensation for services that [it] received from Customers," and (2) affidavit testimony from a Waste Management representative asserting generally that Waste Management "pays the City . . . a fee of 25% of the revenues" under the agreement. But the invoices paid by the Apartment Owners and containing a line item for the 25% City Fee raise a fact issue on whether, as the Apartment Owners allege, "Waste Management merely acted as a middleman charged with collecting the City Fee from its customers and forwarding the collected fees on to the City." Other testimony from the same Waste Management representative explained that typically a line item on an invoice distinguishes Waste Management's service rates from other fees or taxes charged to the customer.

The City also contends that it retains governmental immunity because the 25% City Fee is lawful. The City's lawfulness contention rests on its statutory authority to grant Waste Management an exclusive franchise for waste collection and the validity of the ordinance adopting the City's contract with Waste Management. *See* TEX. HEALTH & SAFETY CODE § 364.034(a). But the Apartment Owners do not contest the City's authority to require them to use and pay for specified garbage collection services. Rather, the gist of their complaint is that the amount charged is excessive, has no reasonable relationship to any costs the City incurred, and is thus a general means of raising revenue and an unconstitutional tax.

12

Neither the City's arguments on appeal nor its plea filed in the trial court address this complaint.

Turning to APTVV's claim for a refund of overpaid inspection fees, the City argues that it retains governmental immunity because it can conduct inspections and levy a charge to offset the costs of those inspections. But again, the City's general authority to inspect and charge a fee is not in dispute. APTVV complains that the City failed to make a full inspection of all 612 units but charged APTVV as if it had made a full inspection. The City has pointed to no evidence in the record challenging this claim.

In short, the City's proof does not negate issues of fact and therefore does not show that the trial court lacks jurisdiction. *See Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 635. We therefore conclude that the trial court did not err in denying the plea to the jurisdiction, and we overrule the City's first, second, and fourth issues.

## C. Standing to claim breach of contract

Next, the City argues that the Apartment Owners lack standing to bring a breach-of-contract claim because the Apartment Owners are neither signatories nor third-party beneficiaries of the contract between the City and Waste Management. Thus, the City argues, they cannot "challenge or enforce" the contract.

The Apartment Owners do not assert a breach-of-contract claim against the City. Their breach-of-contract claim is against Waste Management only. Waste

13

Management is not a party to this appeal and is not pursuing a standing challenge on the sole breach-of-contract claim in this suit.

The City may not seek to limit the Apartment Owners' claims against or recovery from nonappealing codefendants in its appeal of an adverse ruling. *See Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 92 (Tex. 1973) (when appealing defendant challenged plaintiffs' right to recover from nonappealing codefendant, Court held that appealing defendant "may not complain of errors which do not injuriously affect him or which merely affect the rights of others"). Moreover, the Apartment Owners' declaratory judgment action against the City does not seek to "challenge or enforce" the contract between the City and Waste Management, as the City contends, but, rather, to obtain the return of allegedly unconstitutional taxes imposed under a city ordinance.

We overrule the City's third issue.[6]

---

[6] To the extent the City's standing complaint is that the Apartment Owners have no particularized injury given that others similarly pay the fee, the Texas Supreme Court's decision in *Perez v. Turner*, 653 S.W.3d 191 (Tex. 2022), forecloses it. A plaintiff has standing to seek reimbursement of a fee because the plaintiff is out-of-pocket the money paid for the fee. *Id.* at 201. The fee does not have to be declared invalid to grant the plaintiff standing. *Id.* at 201–02 (noting that the Court's standing analysis focuses on the nature of the injury, not the merits of the claim). A small fee paid is a particularized injury to establish standing, regardless of whether the merits of the legal challenge to the fee ultimately are resolved in the plaintiff's favor. *See id.*

**D.     Ultra Vires argument does not support reversal of plea ruling**

In the fifth and final issue, the City and its officials argue that no part of the Apartment Owners' suit survives the assertion of governmental immunity because the claims against the officials are not true ultra vires claims.

This appeal challenges a single ruling by the trial court—that the City lacks governmental immunity from suit and that its plea to the jurisdiction is therefore denied. We have already concluded that governmental immunity is unavailable to force the dismissal of the Apartment Owners' claims against the City. Whether the city officials were acting within their authority or ultra vires cannot provide another means for reversing the ruling being challenged. Thus, this is not an issue that is before us.

Had the City prevailed on appeal in establishing governmental immunity, then the viability of the continued claims against the city officials as a suit for ultra vires acts could be before us. But with our holding that the trial court did not err in rejecting the claim of governmental immunity or in denying the plea to the jurisdiction on that ground, the viability of claims against the city officials individually is outside the issue being appealed, which is jurisdictional.

We overrule the fifth issue.

**Conclusion**

We affirm.

Sarah Beth Landau
Justice

Panel consists of Justices Kelly, Landau, and Hightower.