In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00173-CV**
_____

**SOUTHERN MONTGOMERY COUNTY MUNICIPAL
UTILITY DISTRICT, Appellant**

**V.**

**GRACE COMMUNITY CHURCH-THE WOODLANDS, INC., Appellee**

**On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 23-11-17051**

**MEMORANDUM OPINION**

In this interlocutory appeal, Southern Montgomery County Municipal Utility District (the "District" or Appellant) appeals the trial court's denial of its plea to the jurisdiction, and Grace Community Church-The Woodlands, Inc. ("the Church," or Appellee) cross-appeals from the trial court's order granting the plea to the jurisdiction of Bruce Harrison, Terry Davis, Joe Atkinson, Connie Kaylor, and Greg Belanger, each in their official capacities as officers and directors of the Southern

1

Montgomery County Municipal Utility District (the "Directors"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). The underlying suit arises out of certain fees the District charged the Church pertaining to the installation of a "tap" for water service. We affirm the trial court's denial of the District's plea to the jurisdiction, reverse the trial court's grant of the plea to the jurisdiction filed by the Directors, and remand the matter to the trial court.

## Allegations in the Original Petition

In its Original Petition, the Church alleges that the District and its Directors collectively "unlawfully collect" taxes under the "guise of 'tap fees.'" The Church states that it is willing to pay "tap fees" in the amount of the District's "actual cost" to install a new tap and to provide service to the Church, but it contends the District seeks to impose fees that far exceed the District's actual costs and even exceed the fees it collects from any other user, including for-profit users.

The Church contends that the District has no governmental immunity from the claims asserted in the Original Petition because:

> [the Church] seeks declaratory and injunctive relief seeking the refund of illegally collected taxes and fees paid under duress . . . ; [] governmental immunity is waived for [the Church]'s claims under the Texas Religious Freedom Restoration Act, Tex. Civ. Prac. & Rem. Code § 110.008; and [] governmental immunity is waived for [the Church]'s claims that the District's rate order is unconstitutional or unlawful under Section 37.006(b) of the Texas Civil Practice and Remedies Code[;] [and] the District has no governmental immunity because it constitutes a person under 42 U.S.C. § 1983.

2

As to the individual directors, the Church alleges the Directors also lack governmental immunity for the claims asserted "for the same reasons that the District has no governmental immunity[,]" and because the Petition alleges that "the Directors acted without legal or statutory authority in charging or collect[ing] the unlawful fees."

In the Petition, the Church alleges that the District is a special purpose water district created pursuant to article XVI, section 59 of the Texas Constitution. It provides utility (water and related) services across certain areas in Montgomery County, including in the geographic area where the Church is located. If users need water services from the District, they make a request to the District to connect them to the District's water system. The District connects customers through a tap or pipe that connects the District's water system to end users. The District installs all taps on its system and seeks reimbursement for the installation costs from the user.

The Church contends the Church is a tax-exempt religious organization. The tax-exempt status of religious organizations is recognized by the original Texas Constitution and by the legislature in the Texas Tax Code. *See* Tex. Const. art. VIII, § 2 (the Texas Legislature has the option to "exempt from taxation . . . actual places of religious worship, [and] any property owned by a church or by a strictly religious society for the exclusive use as a dwelling place for the ministry of such church");

3

Tex. Tax Code Ann. § 11.20(a), (c) (exemption from property taxes to all those that qualify as "religious organization[s]").

As its congregation has expanded from 2007 to today, the Church has expanded its facilities. In 2023, it began planning to expand and build a new office building for its church staff and a new auditorium for a new sanctuary. The Church needed additional water services for the expanded facilities, which required a new 8" water tap to connect the new buildings to the District's water system. The tap was necessary to provide water service to the Church for expanded water usage, so the Church requested that the District install the tap, and the District informed the Church that the Church would have to pay a "tap fee" before the tap could be installed. After several discussions between the Church and the District, the District quoted the Church a tap fee of $61,500, which the Church believed was more than the actual cost to install the tap. The Church requested an explanation for why the tap fee was more than double the actual cost of installation, and the District explained that it had applied the rate it charged to commercial entities. The Church informed the District that the Church is part of a tax-exempt religious institution, not a commercial business. In response, the District recalculated the tap fee and requested a tap fee in the amount of $147,938.85, and the Church responded and argued that the new amount was too high, and more than an estimated actual cost of installation of $24,900, and the Church alleges it included an additional fee of $123,038.85. The

4

Church argued that the fees are an illegal substitute for taxes and alleged that the District had simply calculated the "fee" using the District's tax rate of $0.16/$100, which it then applied to the Montgomery County Appraisal District's valuation of the Church—and it claimed this is the formula the District uses to calculate taxes on commercial non-exempt entities. According to the Church, the District had then multiplied the amount by fifteen to replicate fifteen years of taxes on the Church. According to the Church, the District refused to install the tap unless the Church paid the equivalent of what would be fifteen years of taxes. The Church, as a non-taxable entity, objected to the payment of fifteen years of taxes as a condition for the District's installation of a tap. The Church alleged that in March of 2023, the pastor attended the District's board meeting and raised the concerns of the Church, and thereafter the District told the Church it could pay the tap fee that the District charged "commercial businesses, $61,500." The Church then had their attorney send a letter to the District in May of 2023, asking the District to reconsider the "illegal taxes[,]" and warning that the District's attempts to impose this fee constituted a violation of the Texas Religious Freedom Restoration Act (TRFRA) and the letter gave sixty days' notice that the District should cease its "burden on [the Church]'s and its members' free exercise of religion." The District acknowledged the Church's letter and indicated it would reconsider the fees. The District then recalculated the "fee" and demanded a "fee" of $83,780, which it described as a "capital recovery fee."

5

The District took the position that it was permitted to impose such a fee for centralized facilities under section 49.212(d)(2)(B) of the Texas Water Code, which permits the District to recover "actual costs" incurred by the District to construct or improve centralized facilities to service a non-taxable entity if the District must finance the construction or improvements by tax-supported revenue bonds. The Church disagreed with the "capital recovery fee" and alleged that the District did not have to finance the construction and "did not and does not need to construct or improve any centralized facilities to provide service to [the Church]." The District continued to refuse to install the tap unless the Church paid the "fee" and demanded $83,780.

The Church alleges that the fees being charged by the District bear no relationship to the actual costs incurred to provide the tap and demonstrate that the District is trying to recoup what is essentially *taxes* from the Church (a tax-exempt entity) as a pro rata portion of the total capital cost of the District's central facilities which were built and financed decades ago. The Church alleges it was placed in an untenable position because the Church was nearing completion of the new office building and the new sanctuary, but the Church could not complete and occupy the new buildings without the water tap. While there was existing water service to the Church property, the existing water service provides insufficient water pressure to support the fire-suppression system for the new buildings, and the Church alleges it

6

could not legally use or occupy the new facilities until that fire suppression system was fully operational and approved by the County. In August 2023, the Church informed the District of its willingness to pay the actual cost (approximately $24,900) to begin installation of the tap to allow the Church to complete construction and occupy the new facilities, while allowing the District to reserve the right to impose additional fees if the parties or a court determined that any additional fees were lawful. The District refused that proposal. The District insisted that the Church pay the entire fee ($83,780) before the District would install the new tap. The Church alleges it was unable to complete and use the new facilities without the tap. In September 2023, the Church paid the tap fee of $83,780, but it alleges it did so under "duress." The Church alleges it sent a letter with the payment stating it was making the payment "under protest and duress."

In Count I of the Petition, the Church seeks declaratory relief against the District and its Directors, requesting a declaratory judgment that the "fee" is an unlawful tax, the District and its Directors acted without legal or statutory authority in imposing the fees or tax, and that the fee imposed is an "unlawful tax to the extent it exceeds the actual cost to the District to install the tap, and [the Church] seeks a refund of its payment made under protest and duress." Further, the Church requests a declaration that the "fees" are not authorized by section 49.212(d)(2)(B) of the Texas Water Code, or in the alternative, even if authorized under that statute, that

7

the Water Code provision is unlawful. The Church also seeks a permanent injunction prohibiting the District from collecting such fees from a tax-exempt organization, secular or religious, in the future. The Church claims that the fee imposed by the District is an unlawful tax imposed without any authorization.

In Count II, the Church seeks a declaratory judgment that the actions of the District and of the Directors in imposing the fees violate the TRFRA and the Free Exercise Clause of the First Amendment. The Church alleges that the "tap fee" is not authorized by section 49.212(d)(2)(B) of the Texas Water Code and to the extent it had been authorized, it would violate TRFRA.

In Count III, the Church asserts a claim under 42 U.S.C § 1983, which the Church alleges "authorizes a cause of action against any government official who deprives a person of a constitutional right while acting under the color of state law." The Church alleges that "[t]he Free Exercise Clause of the First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits any state action abridging the free exercise of religion." The Church contends that the District's "tap fee" violates the First Amendment's Free Exercise Clause and it places a real and substantial burden on the Church and its members' free exercise of religion. The Church contends the "tap fee" is not neutral, the "tap fee" cannot meet the strict scrutiny test, the District fails to articulate a compelling interest, and the District failed to use the least restrictive means.

8

As to the allegations against the Directors, the Church alleges that the District's Directors, in their official capacity, have no governmental immunity from the claims asserted in this Petition for the same reasons that the District has no governmental immunity. The Church also alleged in the Petition, that the Directors acted without legal or statutory authority in charging or collecting "the unlawful fees[]" and "in imposing this tax disguised as a tap fee[.]" The Church further alleges that the "District and its Directors" violated TRFRA. And they allege the District and its Directors imposed and collected unlawful taxes under the "guise of 'tap fees.'"

Plea to the Jurisdiction

The District and the Directors filed Defendants' Plea to the Jurisdiction and Original Answer and an Amended Plea to the Jurisdiction, arguing that all the defendants are immune from suit and liability under the doctrine of governmental immunity. In the Amended Plea to the Jurisdiction and Brief in Support of the Amended Plea to the Jurisdiction, the District contends that the Church failed to clearly allege a statutory waiver for the governmental immunity held by the District and its Directors, and that it fails to plead facts indicating it paid the "tap fee" under "duress." The District argues that the Church failed to include in its pleading "any facts" alleging a violation of the TRFRA, and more specifically, failed to show "the burden of the District's fee on Plaintiff's overall resources and activities" which is a

9

necessary element of the Church's claim. Additionally, the District contends the Church failed to plead facts that would implicate a First Amendment free exercise claim.

As to the claims against the Directors, the District and Directors argued that (1) because the Directors were sued solely in their official capacity, they are entitled to the same governmental immunity from the Church's suit as the District itself, and (2) there are no allegations that the Directors acted ultra vires which would support an independent ultra vires claim against them to which governmental immunity does not apply. The Church filed a Response to Defendants' Plea to the Jurisdiction. The District and Directors filed a Reply.

On April 15, 2024, the trial court signed an Order on Amended Plea to the Jurisdiction denying "the Amended Plea as to the District[]" and granting the plea to the jurisdiction as to "the individual board members." The District filed an accelerated interlocutory appeal of the denial of its plea to the jurisdiction under section 51.014(a)(8) of the Texas Civil Practice and Remedies Code, and the Church filed a cross-appeal of the trial court's grant of the Directors' plea to the jurisdiction under the same statute.

## Motion to Dismiss Cross-Appeal

On appeal, the Directors, Cross-Appellees, filed a motion to dismiss the Cross-Appeal filed by the Church. The movants contend that interlocutory appellate

10

jurisdiction is strictly construed and there is no statutory authorization for an interlocutory appeal by the Church, as a non-governmental plaintiff, from an order *granting* a plea to the jurisdiction of the individual directors. The Church disagrees.

In their briefing on this issue, both parties rely upon and cite to the same statute and the same seminal case for each of their arguments—section 51.014(a)(8) and *Texas A&M University System v. Koseoglu*, 233 S.W.3d 835 (Tex. 2007)—yet they reach different conclusions.

The Directors argue that in *Koseoglu*, the Court discussed section 51.014(a)(8) and referenced its interplay with section 51.014(a)(5) of the Texas Civil Practice and Remedies Code, which the Directors contend explicitly states that an interlocutory appeal of an order adjudicating an individual officer's assertion of immunity in a motion for summary judgment is permitted only where the court *denies* immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5) ("A person may appeal from an interlocutory order of a district court . . . that . . . denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state."). According to the Directors, the "reasoning in *Koseoglu* effectively interpreted § 51.014(a)(8), which may be invoked by an individual officer asserting governmental immunity in official capacity suits, as co-extensive with § (a)(5), which may be invoked by an individual officer asserting official immunity in personal capacity

11

suits[,]" and that "*Koseoglu* now allows an individual officer to initiate an immediate interlocutory appeal of a denial of his assertion of immunity in *both* situations." That said, the Directors contend that *Koseoglu* does not allow "immediate appellate review where an individual officer's assertion of governmental immunity is *granted*."

The Church contends that section 51.014(a)(8) specifically provides the right to any person, including non-governmental plaintiffs such as the Church, to appeal from either the denial *or grant* of a plea to the jurisdiction by a governmental unit. The Church argues the Supreme Court of Texas in *Koseoglu* expressly recognized that a plea to the jurisdiction which is filed by officers of a governmental unit in their official capacity, invoking the governmental immunity of that governmental unit, "constitutes 'a plea to the jurisdiction by a governmental unit' under Section 51.014(a)(8)[,]" and therefore this Court should deny the Directors' motion to dismiss.

In *Koseoglu*, Sefa Koseoglu worked as an employee with a division of the Texas A&M University System. 233 S.W.3d at 837. Koseoglu sued the Texas A&M University System, the Texas Engineering Experiment Station ("Texas A&M," collectively), and Mark McLellan, his supervisor, for allegedly breaching his employment contract. *Id.* Both Texas A&M and McLellan filed pleas to the jurisdiction asserting sovereign immunity and challenging the trial court's

jurisdiction to hear Koseoglu's claims. *Id.* The trial court denied the pleas to the jurisdiction, and Texas A&M and McLellan appealed. *Id.* The court of appeals reversed the trial court's judgment with respect to Texas A&M's plea to the jurisdiction, holding Texas A&M's sovereign immunity from suit barred Koseoglu's breach of contract claim. *Id.* However, the court of appeals concluded Koseoglu deserved an opportunity to amend his pleadings and therefore remanded that claim to the trial court. *Id.* With respect to McLellan's appeal, the court of appeals held it was without jurisdiction to decide that appeal because, as a state official, McLellan had no statutory right under section 51.014(a)(8) of the Texas Civil Practice and Remedies Code to an interlocutory appeal of the trial court's ruling on the plea to the jurisdiction premised on sovereign immunity. *Id.*

The Supreme Court granted review and affirmed the court of appeals' judgment with respect to Texas A&M's appeal, it reversed the remand order and dismissed Koseoglu's claim against Texas A&M, it reversed the judgment of the court of appeals regarding McClellan's ability to seek an interlocutory appeal, and the Supreme Court rendered a judgment in favor of McClellan. *Id.* The Supreme Court concluded that when a state official like McClellan as an officer of a governmental unit files a plea to the jurisdiction, a trial court's ruling on the plea fits squarely into an appealable ruling permitted by Section 51.014(a)(8), and it may be appealed by any party for "either a grant or denial of such plea" under section

13

51.014(a)(8). *Id.* at 844-845. The Supreme Court stated that when an officer or director is sued in his official capacity, the real party in interest in such a suit is the governmental unit, and the officer is invoking the governmental unit's governmental immunity, making the substance of the plea a "plea to the jurisdiction by a governmental unit." *Id.*

According to the live pleading in this case, the Directors have been sued in their "official capacity." The Directors filed a plea to the jurisdiction and asserted governmental immunity, and the trial court granted their plea. The Directors are invoking the governmental unit's immunity, and we agree with the Church that section 51.014(a)(8) applies. *See id.* Under that provision, a party may appeal the grant or the denial of the plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). Therefore, we conclude we have jurisdiction to decide the cross-appeal of the trial court's grant of the Directors' plea to the jurisdiction. We deny the Directors' motion to dismiss.

Applicable Law Regarding a Plea to the Jurisdiction

A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject matter jurisdiction, regardless of the merits of the asserted claim. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). We review de novo the trial court's ruling on a plea to the jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). The plaintiff carries the burden to affirmatively

14

demonstrate the trial court's jurisdiction. *Heckman v. Williamson Cnty*, 369 S.W.3d 137, 150 (Tex. 2012). We analyze whether the plaintiff has "alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in the plaintiff's favor, taking them as true, and looking to the plaintiff's intent. *Id.* We may also consider evidence that the parties have submitted that is relevant to the jurisdictional issues when a party challenges the existence of jurisdictional facts as opposed to challenging the sufficiency of the pleadings, and we must do so when necessary to resolve those jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If the jurisdictional challenge implicates the merits of plaintiff's causes of action, "the party asserting the plea has the burden of negating a genuine issue of material fact as to the jurisdictional fact's existence, in a manner similar to a traditional summary-judgment motion." *Texas Health & Hum. Servs. Comm'n v. Sacred Oak Med. Ctr. LLC*, No. 03-21-00136-CV, 2022 Tex. App. LEXIS 4279, at *9 (Tex. App.—Austin June 23, 2022, no pet.) (mem. op.). In such a situation, we review "the evidence in the light most favorable to the nonmovant to determine whether a genuine issue of material fact exists." *Id.* at **9-10 (citing *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019)). If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of

15

pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). It is only when the pleadings affirmatively negate the existence of jurisdiction, that a plea to the jurisdiction may be granted without the opportunity to amend. *Id.*

Governmental immunity protects political subdivisions of the state from lawsuits for money damages unless immunity has been waived. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Municipal utility districts, like the District, were created under the authority of article XVI, section 59 of the Texas Constitution. *See Sutton Bldg., Ltd. v. Travis Cnty. Water Dist. 10*, No. 03-02-00659-CV, 2004 Tex. App. LEXIS 5526, at *5 (Tex. App.—Austin June 24, 2004, no pet.) (mem. op.) (citing Tex. Const. art. XVI § 59; Tex. Water Code Ann. § 54.011; *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 940 n.4 (Tex. 1993) (municipal utility districts are special purpose districts akin to cities and counties rather than State agencies)). As such, municipal utility districts perform governmental functions. *See id. at *6* (citing *Bennett v. Brown Cnty. Water Improvement Dist. No. 1*, 272 S.W.2d 498, 500 (Tex. 1951)). "As a general rule, governmental immunity applies to such functions." *Id.*

Here, the Church seeks declaratory and injunctive relief, and a refund of the amount it paid that it contends exceeds the actual cost to provide the tap (it alleges

16

the actual cost was $24,900). The Church alleges in its Petition in paragraphs 16 and 17 that governmental immunity does not bar their claims asserted as follows:

> 16. The District has no governmental immunity from the claims asserted in this Petition because Grace seeks declaratory and injunctive relief seeking the refund of illegally collected taxes and fees paid under duress, *Nivens v. City of League City*, 245 S.W.3d 470, 474 (Tex. App.–Houston [1st Dist.] 2007, pet. denied); because governmental immunity is waived for Grace's claims under the Texas Religious Freedom Restoration Act, TEX. CIV. PRAC. & REM. CODE § 110.008; and because governmental immunity is waived for Grace's claims that the District's rate order is unconstitutional or unlawful under Section 37.006(b) of the Texas Civil Practice and Remedies Code. Further, the District has no governmental immunity because it constitutes a person under 42 U.S.C. § 1983. *See Stratta v. Roe*, 961 F.3d 340, 356 (5th Cir. 2020); *see also Guar. Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex. 1980).

> 17. The District's Directors, in their official capacity, have no governmental immunity from the claims asserted in this Petition for the same reasons that the District has no governmental immunity as stated above, and because the Petition also alleges that the Directors acted without legal or statutory authority in charging or collect[ing] the unlawful fees.[1]

On appeal, the District, the Directors, and the Church make the same arguments each made in the trial court.

---

[1] In paragraph 63 of the Petition the Church further alleges:

> 63. Under Chapter 37 of the Texas Civil Practice and Remedies Code, a person whose rights are affected by government action "may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM. CODE § [] 37.004.

17

Additionally, the District and Directors, contend that the narrow waiver of immunity contained in section 37.006 applies only to challenges to the validity of a municipal ordinance or statute, and it does not apply to the allegations in Plaintiff's declaratory judgment cause of action. In its petition, the Church alleged that the tap fee and capital recovery fee constitute an illegal tax imposed on a tax-exempt religious organization in violation of Texas Tax Code section 11.20(a), and it is unlawful and void. The Church also alleged that the capital recovery fee is unauthorized by the provisions of section 49.212(d)(2)(B), and even if it had been authorized in that part of the Water Code, the statute would be unconstitutional, and it is unlawful to charge such fees in this manner to the Church.

Analysis

Common Law Claim for Refund of Illegal Taxes or Fees

The Church contends the fees charged by the District are illegal fees or taxes because the Church is a tax-exempt religious organization, and that it paid the fees under duress. Generally, governmental immunity does not bar a claim for declaratory and injunctive relief seeking the refund of illegally collected tax payments, "if the taxpayer alleges that the payments were made as a result of fraud, mutual mistake of fact, or duress, whether express or implied." *Nivens*, 245 S.W.3d at 474 (citing *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 876-79 (Tex. 2005)). "No legislative consent to sue is needed under these circumstances." *Id.* The

18

Supreme Court of Texas "applie[s] these rules to the imposition of illegal fees as well as illegal taxes[.]" *Bolton*, 185 S.W.3d at 877; *see also Kubosh v. Harris Cnty.*, 416 S.W.3d 483, 487 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Bolton*, 185 S.W.3d at 876-79). Duress may include "business compulsion arising from payment of government fees and taxes coerced by financial penalties, loss of livelihood, or substantial damage to a business." *Bolton*, 185 S.W.3d at 878.

In *Bolton*, Bolton and other students filed a class action lawsuit against the Community College over fees the college charged students for "technology purchases and to support student services[.]" *Id.* at 870. The trial court certified a class of students who paid these fees, and a jury awarded the Class approximately $15 million. *Id.* The court of appeals applied a shorter statute of limitations, limited the award of prejudgment interest, and ordered a reduction in the total recovery, but affirmed the remainder of the judgment. *Id.*

The Texas Supreme Court granted review and reversed and rendered a judgment for the College. *Id.* at 871. The Court held that the Texas Education Code authorized the District to impose the technology fee, and the Court concluded that the Class could not seek repayment of the student services fee because the District established as a matter of law that the fee was a voluntary payment and the undisputed evidence did not establish that the fee was paid under duress which would rebut the voluntary payment rule. *Id.*

19

We note that the legislature may provide a specific procedure to challenge certain taxes and if it does, then that specific procedure may supplant the common law remedy. *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 769-71 (Tex. 2005) (noting that "other legal and statutory remedies have evolved over time to supplant the rule's application in many of these contexts[]"). Here, none of the parties contend there is a legal or statutory process available through which the Church could have contested the fees charged by the District. Instead, the District and Directors contend that the Church failed to meet its burden to show the payment was made under "duress." The District argues the Church's reliance on a common law action for refund of unlawfully collected taxes and fees paid under duress is "misplaced, however, because Plaintiff does not allege sufficient facts in its petition to indicate that it made a payment of fees under duress."

We analyze whether the plaintiff has "alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in the plaintiff's favor, taking them as true, and looking to the plaintiff's intent. *Id*. After reviewing the alleged facts and liberally construing the pleadings in favor of the plaintiff, we conclude that the Church has sufficiently alleged that it paid the charges under duress. For example, the Church alleged that the District's refusal to install the tap unless the church paid the tax put the Church in an "untenable position[]" because the Church was nearing completion

of new buildings that the Church could not complete or occupy without the tap and that without the tap the Church could not get necessary permitting because the Church would have insufficient water pressure to support its fire-suppression system. The Church asserted that the District's imposition of the tax-like fee scheme prevented the Church from operating and providing its ministries, and the Church had no choice but to "accede to the District's demands" and pay the District $83,780 while making clear that the payment was made "under protest and duress."

Accordingly, we conclude that the trial court did not err in denying the District's plea to the jurisdiction with respect to the Church's common law claim for declaratory and injunctive relief seeking a refund of illegally collected tax or fee payments.

<u>Alleged Waiver of Immunity under Section 37.006</u>

As to the allegation in the Petition that immunity has been waived for the Church's claims under Chapter 37 of the Texas Civil Practice and Remedies Code, the Texas Uniform Declaratory Judgments Act ("UDJA") provides that "[a] court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a). That said, "the UDJA . . . 'does not enlarge a trial court's jurisdiction, and a litigant's request for declaratory relief does not alter a suit's underlying nature.'" *Collier v. Suhre*, 605 S.W.3d 699, 704 (Tex. App.—

21

Houston [1st Dist.] 2020, no pet.) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009)). The UDJA is "a procedural device for deciding cases already within a court's jurisdiction." *Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 916 (Tex. 2015) (citation omitted).

The District and Directors contend that the allegations in the Petition simply do not fall within the waiver contemplated in section 37.006 because the Church is not challenging a legislative action of any kind, much less an ordinance or statute. The District argues that the target of the Church's challenge here is governmental action pursuant to a statute, not the declaration that the statute or legislative enactment itself is unlawful, and Section 37.006 does not waive immunity for this challenge. We agree.

The claims asserted in the Church's Original Petition do not make a facial challenge to the validity of a legislative action, ordinance, or statute. The Church's declaratory judgment claim challenges the District's reliance upon, interpretation, and application of provisions of the Tax Code and Water Code, but it does not question the facial "validity" of those statutes. The Church's declaratory judgment claim is asking the court to construe the terms of those statutes and to invalidate the District's actions in imposing and collecting the fees at issue here which the Church contends are not authorized by those statutes. So, the waiver of governmental immunity outlined in Section 37.006 is not applicable to the statutory construction

22

claims asserted in the Church's Petition. *See Tex. Dept. of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011) (the state may be a proper party to a declaratory judgment that challenges the validity of a statute, but Sefzik did not challenge the validity of a statute but only TxDOT's actions under it); *McLane Co. v. Tex. Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 876 (Tex. App.—Austin 2017, pet. denied) (the waiver of immunity in the UDJA does not apply to "bare 'statutory construction' claims[,]" as explained by the Supreme Court in *Sefzik*).

### Claim Under TRFRA

The Church also asserts a claim under the Texas Religious Freedom Restoration Act (TRFRA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 110.008. TRFRA contains an express statutory waiver of governmental immunity. *See id.* The District acknowledges in its appellate brief that the statute contains a waiver of immunity, but the District argues that the Church failed to allege sufficient facts to state a claim because it has not alleged that the tax or fees constitute "a substantial burden" on its exercise of religious freedom. "A person's religious exercise has been substantially burdened under the [TRFRA] when his ability to express adherence to his faith through a particular religiously-motivated act has been meaningfully curtailed[.]" *Barr v. City of Sinton*, 295 S.W.3d 287, 302 (Tex. 2009). The burden is evaluated on a "case-by-case, fact-specific inquiry." *Id.*

Construing the pleadings in a light most favorable to the Church, we conclude the Petition adequately alleged that the religious freedom of the Church's members has been "substantially burdened" by the charges or fees. In the Petition, the Church alleged that it was a tax exempt religious organization, the tap fee cost was approximately $24,900 but the District charged the Church $83,780, and the Church's new building, a sanctuary, could not be used by the congregation until the water tap was completed and the District would not provide the water tap unless the Church paid the charge. We conclude that the trial court did not err in denying the plea to the jurisdiction on this claim because the Church sufficiently alleged a claim under TRFRA and the claim is not barred by immunity.

<u>Claims Under 42 U.S.C. § 1983</u>

With respect to the Church's claim under 42 U.S.C. § 1983,[2] the District concedes that it lacks immunity from suit for a properly asserted claim under Section

---

[2] **§ 1983. Civil action for deprivation of rights**
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ….

42 U.S.C. § 1983.

42 U.S.C. § 1983, but the District argues here the Church has failed to state a valid claim because it did not allege an action by the District that is not generally applicable or neutral to religious exercise. The District contends it charges everyone a tap fee. In contrast, Grace contends the District is trying to illegally charge the Church the fee at issue whether they call it a tap fee or a Water Code fee. The Church alleged that the District has "singled out" the Church, a tax-exempt religious organization, to pay an illegal tax, created solely to apply to Grace, and specifically because Grace is a tax-exempt organization from which the District cannot otherwise collect taxes. The Free Exercise Clause in the First Amendment to the Constitution provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. *See* U.S. Const. amend. I. The Supreme Court has held the Free Exercise Clause applicable to the States pursuant to the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

Under 42 U.S.C. § 1983, alleged violations of the Free Exercise Clause are subject to strict scrutiny. *See Fulton v. City of Philadelphia*, 593 U.S. 522, 533-34, 541 (2021). A plaintiff has the initial burden of proving a free exercise violation and may do so "in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022). Here, the Church alleged that the District has burdened it First Amendment Rights

by charging the Church an illegal fee, and the amount that the District charged the Church is different and higher than the amount the District charges non-religious organizations. The District argues it charges all of its customers a tap fee and it contends it has the right under the Texas Water Code section 49.212(d)(2)(B), to charge the Church the $80,000+ fee because the Water Code allows the District to recoup "actual costs" incurred by the District to construct or improve centralized facilities to service a non-taxable entity if the District must finance the construction or improvements by tax-supported revenue bonds.

The Church asserts in its Petition that the District's improper reliance upon the Water Code is something the District came up with solely to justify charging the Church more than it should, and that the District admits the Church is a tax-exempt religious organization and that it charged the Church more because the Church does not pay taxes. We conclude that the Church has sufficiently alleged a claim under 42 U.S.C. § 1983, and that the trial court did not err in denying the District's plea to the jurisdiction on this claim. *See Kennedy*, 597 U.S. at 525.

<u>Cross-Appeal and Trial Court's Ruling as to Directors</u>

When a government official who has been sued in his official capacity files a plea to the jurisdiction based on sovereign immunity, he is invoking the immunity from suit "held by the government itself." *Koseoglu*, 233 S.W.3d at 844. His immunity is said to be derivative of the governmental agency for whom he works.

26

*Franka v. Velasquez*, 332 S.W.3d 367, 382-83 (Tex. 2011). Therefore, immunity protects the directors only "to the extent that it protects" the District. *See Heinrich*, 284 S.W.3d at 380.

Here, as explained above, we have concluded that as to the District, three claims are not barred by immunity—the common law claim for declaratory and injunctive relief seeking a refund of illegally collected tax or fee payments, the TRFRA claim, and the claim under 42 U.S.C. § 1983. The Directors' derivative immunity is no greater than the District's immunity. *See Franka*, 332 S.W.3d at 382-83.

That said, the Church also argues even if immunity barred the claim against the District, it would not bar the claim against the Directors because they alleged an ultra vires claim against the Directors. *See Garza v. Harrison*, 574 S.W.3d 389, 399 (Tex. 2019). "A suit against a governmental employee in an official capacity is effectively a suit against the employing governmental unit, except in those cases alleging the employee has acted *ultra vires*." *Id*.

To successfully assert an ultra vires claim, the plaintiff must plead, and ultimately prove, that the officials acted without legal authority or failed to perform a ministerial act. *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021) (citing *Heinrich*, 284 S.W.3d at 372). An officer acts without legal authority "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hous.*

*Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). We need not determine whether the Church properly alleged an ultra vires claim against the Directors because we have concluded that the Church otherwise stated a valid claim against the District not barred by sovereign immunity.[3]

Therefore, we sustain the cross-appeal of the Church and conclude the trial court erred in granting the Directors' plea to the jurisdiction based on immunity with respect to the common law claim for declaratory and injunctive relief seeking a refund of illegally collected tax or fee payments, the TRFRA claim, and the claim under 42 U.S.C. § 1983, and we remand the Church's claims against the Directors to the trial court for further proceedings consistent with this opinion.

<u>Conclusion</u>

In conclusion, we agree that the Church could not rely upon Section 37.006 of the Texas Civil Practice and Remedies Code as a basis for a waiver of the

---

[3] Assuming without deciding that the Church successfully alleged in its Petition an ultra vires claim against the Directors, the officials generally would not be liable for any "retrospective monetary claims." *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) ("Only *prospective* injunctive relief is available on an *ultra vires* claim."). Similarly, if a party prevails on a claim against officials who acted in their official capacity, "a plaintiff seeking to recover *on a damages judgment* in an official-capacity suit must look to the government entity itself." *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (emphasis added) (official capacity suits contrast with "an award of damages against an official in his personal capacity [which] can be executed only against the official's personal assets[]").

District's immunity, but we conclude the trial court did not err in denying the District's Plea to the Jurisdiction because immunity does not bar the Church's common law claim for declaratory and injunctive relief seeking a refund of illegally collected tax or fee payments, the TRFRA claim, and the claim under 42 U.S.C. § 1983. We therefore affirm the trial court's denial of the District's plea to the jurisdiction, we reverse the trial court's grant of the plea to the jurisdiction filed by the Directors, and we remand this matter to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.


LEANNE JOHNSON
Justice

Submitted on May 19, 2025
Opinion Delivered March 26, 2026

Before Golemon, C.J., Johnson and Chambers, JJ.

29